NELSON E. GRAVES, Respondent, *v.* JAMES C. DAVIS, as Agent of the UNITED STATES RAILROAD ADMINISTRATION, Appellant.

**Ships and shipping — towage — tug not a common carrier of a tow — validity of contract of charterer by which owner of tug is relieved from liability to owner of the tow for injury to tow caused by negligence in operation of tug.**

1. A tug is not a common carrier of the tow and the owners thereof may restrict their liability by special agreement. No rule of public policy is involved.

2. Where a corporation operating tug boats in the harbor of New York notified by letter its customers that thereafter the corporation would cease being responsible for any damage through negligence to vessels while in the tow of their tugs, and subsequently one of such customers, the charterer of a barge used for carrying coal, engaged a

tug of the towing corporation to tow the barge, such charterer, when it ordered towing service without protest, accepted such terms and entered into a special contract with the tug owner which bound the owner of the tow and relieved the former from liability to the owner of the tow for damage to the tow caused by the negligent operation of the tug.

*Graves* v. *Davis*, 202 App. Div. 842, reversed.

(Argued March 15, 1923; decided March 23, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 26, 1922, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Harrington Putnam* and *H. H. Breland* for appellant. Under the hiring of this barge, the Hartmann-Blanchard Company had possession and control, so that it became the special owner of the *Lloyd;* and its towage contracts, therefore, bind the plaintiff's interest therein. (*Drinkwater* v. *The Spartan*, 1 Ware, 145; *Leary* v. *United States*, 14 Wall. 607, 610; *U. S.* v. *Shea*, 152 U. S. 178; *Auten* v. *Bennett*, 183 N. Y. 496; *Freeman* v. *Buckingham*, 18 How. [U. S.] 182; *Ten Eyck* v. *Director-General*, 267 Fed. Rep. 974; 254 U. S. 646; *The Oceanica*, 170 Fed. Rep. 893; *Monk* v. *Cornell Steamboat Co.*, 198 Fed. Rep. 472; *Reid* v. *Fargo*, 241 U. S. 544; *The Daniel Burns*, 52 Fed. Rep. 159.) Tugboats engaged in towing are not insurers, nor are they common carriers. (*Alexander* v. *Greene*, 3 Hill, 1; *The Webb*, 14 Wall. 406; *Milton* v. *Hudson River Steamboat Co.*, 37 N. Y. 210; *The Margaret*, 94 U. S. 494; *The L. P. Dayton*, 120 U. S. 337; *Wells* v. *Steam Nav. Co.*, 2 N. Y. 204; *Ten Eyck* v. *Director-General*, 267 Fed. Rep. 974; *White* v. *Schoonmaker Connors Co.*, 265 Fed. Rep. 465; *Gannon* v. *Consolidated Ice Co.*, 91 Fed. Rep. 539; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y. 412.)

*William Van Wyck* and *James M. Gorman* for respondent. Plaintiff's cause of action was well founded. It is elementary that one whose property has been injured by the negligence of others may sue any or all of the tort feasors and that a bailor by reason of his ownership may sue one or all of them for the damages to his reversionary interests. (*Phelps* v. *Wait,* 30 N. Y. 78; *Suydam* v. *Moore,* 8 Barb. 358; *April* v. *Baird,* 32 App. Div. 226; *G. R. & I. Ry. Co.* v. *Resur,* 186 Ind. 563; *Manders* v. *Williams,* 4 Exch. 338; *Mears* v. *L. & S. W. Ry. Co.,* 11 C. B. N. S. 850; *McLaughlin* v. *N. S. R. R. Co.,* 93 S. E. Rep. 748; *M., K. & T. Co.* v. *Hunter,* 216 S. W. Rep. 1107; *N. Y., L. E. & W. R. R. Co.* v. *N. J. El. Ry. Co.,* 60 N. J. L. 338; 61 N. J. L. 287.) The charterer, Hartmann-Blanchard Company, was not plaintiff's agent in respect to granting to defendant exemption from liability for negligence in towing. The letter of September 2, 1918, of defendant to charterer did not bind plaintiff who knew nothing of it. (*N. Y., L. E. & W. R. R. Co.* v. *N. J. El. Ry. Co.,* 60 N. J. L. 338; 61 N. J. L. 287; *White* v. *Schoonmaker Conners Co.,* 265 Fed. Rep. 465; *White* v. *Upper Hudson Stone Co.,* 248 Fed. Rep. 893; *Gannon* v. *Cons. Ice Co.,* 91 Fed. Rep. 463; *Smith* v. *Bouker,* 49 Fed. Rep. 954; *Boyer* v. *Anderson,* 156 N. Y. 93; *Beard Dredging Co.* v. *Hughes,* 121 Fed. Rep. 808; *Salmen Brick & Lumber Co.* v. *Donald & Taylor,* 194 Fed. Rep. 800; *The Banes,* 221 Fed. Rep. 416; *Golcar S. S. Co.* v. *Tweedie Trading Co.,* 146 Fed. Rep. 563.)

POUND, J. Plaintiff is the owner of the barge *Lloyd* which carried coal in New York harbor. The barge had no motive power and was towed in its movements about the harbor.

On September 2, 1918, during the World War, the director-general of railroads operating the Pennsylvania railroad, acting on behalf of the United States railroad administration, through its superintendent of steam

towing, issued a circular letter under the Pennsylvania railroad caption informing customers that it had " become necessary for us to cease being responsible for vessels while in tow of our tugs.

" That on and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed or chartered by the Pennsylvania Railroad Company. All towing is done at the risk of the tow. Neither we nor the tugs employed in the service, nor the owners shall be responsible for any damage done to the tow, through negligence; and the master and crews of tugs in the performance of the towage service shall become the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips."

On the following day (September 3d) Hartmann-Blanchard Co., Inc., received this notice, which it accepted without objection or dissent, and continued using Pennsylvania Company tugs in coal distribution.

On July 1, 1919, Hartmann-Blanchard Company hired, under a written charter party with plaintiff, the barge *Lloyd* at the rate of $10 per day from July 23, 1919, to April 1, 1920, " to carry coal in the vicinity of New York Harbor and Hudson River, or any place covered by the regular harbor insurance policy." Plaintiff was " to furnish captain for boat during time of charter, and to keep boat in repair, lines and fittings, and arrange and pay insurance on the bottoms."

By order of Hartmann-Blanchard Co., Inc., the *Lloyd* was towed by the Pennsylvania tug *Mercer*, which on December 5, 1919, damaged the barge by collision to the amount of $2,020.

The plaintiff was also the captain or bargee of his barge, living thereon as a watchman or caretaker " to see that they did not harm the boat " but having no

control over its movements or navigation. While he knew that Hartmann-Blanchard Company would have to make their own contracts for towage, he knew nothing about the letter that the company received from the government.

The contention of the defendant is that he is exonerated from liability by reason of the notice sent to the charterer and the subsequent employment by it of the tug without objection.

The courts below have refused to sustain this contention and have held that plaintiff's rights as bailor were not contracted away by the contract of towage entered into between Hartmann-Blanchard Company and defendant. This disposition of the case we deem to be erroneous. The maritime law has a type of charter party, with which we are dealing in this action, to which the general principles of the law of bailments are not wholly applicable.

Plaintiff had parted with the possession and the right of possession of the barge; Hartmann-Blanchard Company had not only the use but the entire control of the barge. It became the special owner or owner *pro hac vice.* The captain became the servant of the charterer. (*Anderson v. Boyer*, 156 N. Y. 93; *Brooklyn Ash Removal Co., Inc., v. Connell*, 225 N. Y. 503.)

The authority of the charterer to engage towage was unrestricted. It, therefore, had power to accept the terms tendered by the director-general which relieved the latter from liability for damage to the tow caused by the negligence of the tug. A tug is not a common carrier of the tow. The owners of a tug may restrict their liability by special agreement. No rule of public policy is involved. (*Wells & Tucker v. Steam Nav. Co.*, 2 N. Y. 204; *The Margaret*, 94 U. S. 494; *Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co.*, 175 U. S. 91, 98, 99.) When the defendant gave notice on what terms it would furnish tug service, the charterer actually accepted such terms and entered into a special contract incorpora-

ting them when it ordered tow service without protest. (*The Oceanica,* 170 Fed. Rep. 893; *Ten Eyck* v. *Director-General,* 267 Fed. Rep. 974; certiorari denied, 254 U. S. 646.) In *McWilliams Bros., Inc.,* v. *Davis* (285 Fed. Rep. 316) the same notice limiting liability was not agreed to by the charterer which by letter notified the director-general that it would not accept the terms stated. The court properly held that a tug owner could not limit its liability merely by giving a general notice which was neither expressly nor impliedly agreed to.

While the charterer had power to relieve the defendant from liability, it remained answerable for the negligence of any one to whom it intrusted the barge, even as an independent contractor. (*Gannon* v. *Consolidated Ice Co.,* 91 Fed. Rep. 539; *White* v. *Schoonmaker-Connors Co., Inc.,* 265 Fed. Rep. 465.)

The principles governing this decision are stated in the *Ten Eyck Case* (*supra*). The distinction made by the learned trial justice whose opinion was adopted by the Appellate Division (116 Misc. Rep. 502, *sub nom. Graves* v. *Hines,* 202 App. Div. 842) is untenable. The tug owner was relieved and the charterer was held liable to the owner of the barge for the damage done by the negligence of the tug owner in the *Ten Eyck* case for the reasons stated in this opinion, and not otherwise.

The judgments below should be reversed and the complaint dismissed, with costs in all courts.

HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; HISCOCK, Ch. J., absent.

Judgments reversed, etc.