## STANDARD INS. CO. OF NEW YORK v. ASHLAND OIL & REFINING CO.
### No. 4024.

United States Court of Appeals, Tenth Circuit.

Dec. 22, 1950.

Huxman, Circuit Judge (dissenting).

Draper Grigsby, Oklahoma City, Okl., for appellant.

Truman B. Rucker, Oklahoma City, Okl. (Clayton B. Pierce and Paul C. Duncan, Oklahoma City, Okl., on the brief), for appellee.

On Rehearing:

Duke Duvall, Oklahoma City, Okl. (Draper Grigsby, Oklahoma City, Okl., on the brief), for appellant.

Truman B. Rucker, Oklahoma City, Okl. (Clayton B. Pierce and Paul C. Duncan, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought in the United States District Court for the Western District of Oklahoma to recover damages resulting from the destruction and damage by fire to rotary drilling equipment and tools which were being used on the premises of the defendant, Ashland Oil and Refining Company, hereinafter referred to as Ashland, under the terms of an agreement entered into between Ashland and E. A. Rumley. Rumley owned the equipment and tools and had insured it against loss by fire with the appellant, Standard Insurance Company of New York, hereinafter referred to as plaintiff. The plaintiff paid Rumley the fire loss of $56,460.79 and brings this suit as his subrogee, alleging the loss was due to the sole negligence of Ashland. The defendant answered and among other defenses alleged that the petition failed to state a claim against the defendant upon which relief could be granted and that the terms of the written contract entered into between Ashland and Rumley bars recovery by the plaintiff. The case came on for trial and after a jury had been duly impaneled and opening statements had been made, Ashland moved to dismiss the action. This motion was sustained and judgment entered in favor of Ashland. Plaintiff appealed and the judgment was affirmed by a majority of this court. A rehearing was granted and we have reconsidered the matter.

The complaint alleged that Rumley entered into a written contract with Ashland whereby Rumley agreed to move his rotary drilling equipment on to the property of Ashland in McClain County, Oklahoma,

'for the purpose of completing and testing an oil well. It further alleged that while Rumley was performing the conditions of the contract, the drilling equipment and tools of Rumley were completely destroyed or damaged by fire through the negligent acts of Ashland, its agents and employees. The written contract provided that Rumley was "to furnish all the rotary drilling equipment, the labor and certain tools necessary to complete and test said well," and that he should, "subject to the terms and conditions herein set forth furnish everything necessary and proper for said purpose * * * at second party's (Rumley) risk, cost and expense." The work was to be done in accordance with the instructions and under the direct supervision of the field superintendent for Ashland. The trial court dismissed the action upon the grounds that under the terms of the contract Rumley had agreed to bear the risks of loss or damage to his equipment which precluded a recovery by his subrogee. No question is raised as to the sufficiency of the allegations of negligence. We are only confronted with the narrow question of whether or not the word "risk" as used in the contract will relieve Ashland from liability for damages caused by its own negligence.

 Plaintiff, as subrogee of Rumley, could recover only upon the right of Rum-

ley. 50 Am.Jur., Subrogation, Sec. 110; United States v. Munsey Trust Co., 332 U. S. 234, 242, 67 S.Ct. 1599, 92 L.Ed. 2022; Phoenix Ins. Co. v. Erie & W. Transportation Co., 117 U.S. 312, 321, 6 S.Ct. 750, 29 L.Ed. 873; Commercial Casualty Ins. Co. v. Petroleum Pipe Line Co., 10 Cir., 83 F.2d 412, 414; Fox v. Dunning, 124 Okl. 228, 255 P. 582, 585; New Amsterdam Casualty Co. v. Reinhart & Donovan Co., 124 Okl. 227, 255 P. 587. The parties to the contract were dealing at arms length and there was no great disparity of bargaining power between them. There is no rule of public policy involved. In such cases the law is that a party to a contract may limit or eliminate liability for future negligence.[1] Such stipulations, however, in private contracts are not favored and will be strictly construed against the person relying upon the same.[2]

The courts have not agreed upon the language of a contract necessary to exculpate one of the parties from liability for its future negligence. Some hold that general words are not sufficient and to accomplish this specific reference to negligence must be made or the intent shown by unequivocal terms.[3] Others state that the intent must be shown by clear and explicit language.[4] An examination of this latter class of cases shows almost without exception that

1. Williston on Contracts, Vol. 6, Sec. 1751 B; Restatement, Law of Contracts, Sec. 574; Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 294, 53 S.Ct. 135, 77 L. Ed. 311; Santa Fe P. & P. R. Co. v. Grant Bros., 228 U.S. 177, 188, 33 S.Ct. 474, 57 L.Ed. 787; Baltimore & Ohio Sw. Ry. Co. v. Voigt, 176 U.S. 498, 513, 20 S.Ct. 385, 44 L.Ed. 560; Cases collected, 175 A.L.R. 8.

2. Williston on Contracts, Vol. 6, Sec. 1825 n. 8; Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79, 84; Doughnut Mach. Corp. v. Bibbey, 1 Cir., 65 F.2d 634, 637; Southern Ry. Co. v. Coca Cola Bottling Co., 4 Cir., 145 F.2d 304, 307; North Am. Ry. Const. Co. v. Cincinnati Traction Co., 7 Cir., 172 F. 214, 216; Fairfax Gas & Supply Co. v. Hadary, 4 Cir., 151 F.2d 939, 940; Glant v. Lloyd's Register, 141 Wash. 253, 251 P. 274, 252 P. 943; Cases Collected, 175 A.L.R. 18, 144.

3. Martin v. American Optical Co., 5 Cir., 184 F.2d 528; Mostyn v. Delaware L. & W. R. Co., 2 Cir., 160 F.2d 15; Southern Bell Tel. & Tel. Co. v. Mayor & Bd. of Aldermen, 5 Cir., 74 F.2d 983; United States v. Wallace, 9 Cir., 18 F. 2d 20; Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 175 A.L. R. 1; Southern Pac. Co. v. Layman, 173 Or., 275, 145 P.2d 295; Laskowski v. Manning, 325 Mass. 393, 91 N.E.2d 231; Massachusetts Bonding & Insurance Co. v. Westinghouse Electric & Manufacturing Co., Ohio App., 72 N.E.2d 388; Walters v. Rao Electrical Equipment Co., 289 N.Y. 57, 43 N.E.2d 810, 143 A. L.R. 308; George H. Dingledy Lumber Co. v. Erie R. Co., 102 Ohio St. 236, 131 N.E. 723.

4. Santa Fe P. & P. Ry. Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787; Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; The Zeller No.

they contain broad and comprehensive language relating to exculpation from negligence. The following excerpts are illustrations of such language: "from and against all claims, suits, damages, costs, losses and expenses," National Transit Co. v. Davis, 3 Cir., 6 F.2d 729, 730, certiorari denied 269 U.S. 579, 46 S.Ct. 104, 70 L.Ed. 422; "hold * * * harmless from the claims and demands of any and all persons on account of any damages or injuries caused directly or indirectly by the existence, location, or condition of any structure", Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; "all risk of loss or damage to be borne by the contractor," Santa Fe P. & P. Ry. Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 475, 57 L.Ed. 787; "I further agree to save and hold * * * harmless of and from any and all loss, damage or injury to any person or persons whomsoever," Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 19, 175 A.L.R. 1; to save harmless from "any and all liability to any person or persons", Kingsland v. Erie County Agri. Soc., 298 N.Y. 409, 84 N.E.2d 38, 50. We find no case in which a court has gone so far as to construe similar language, as used in the instant case, to relieve a party from the consequences of his own negligence.

■ This contract was made in and was to be performed in Oklahoma. It is, of course, to be governed by Oklahoma law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The only Oklahoma decision we find bearing on the subject is Gulf C. & S. F. Ry. Co. v. Anderson, 120 Okl. 60, 250 P. 500. There the railroad company, for a defense, relied upon a release previously executed by the plaintiff which relinquished and discharged the railroad company "from any and all liability that has heretofore accrued or that may hereafter accrue against said railway companies or either of them on account of the obstruction of the flow of water and the causing of same to back

upon or otherwise overflow the above described property, by reason of the construction of the main line, switches, yards, tracks, and embankments of the said railway companies or either of them and by reason of the construction of the dumps, culverts, fills, and openings for the passage of water made and constructed by the said railway companies or either of them." In upholding the judgment against the railroad the court said: "We would not hold that a contract governing and exempting liability for future damages resulting from the negligence of the defendant might not be entered into, but it must be clear, definite, and unambiguous, and show on its face the exact nature, character and extent of the damages which are within the contemplation of the minds of the contracting parties, * * *". In the Sinclair case, 10 Cir., 127 F.2d 128, at 133, we said, "An indemnity contract will not be construed as indemnifying one against his own negligence unless such a construction is required by clear and explicit language of the contract. Doughnut Mach. Corp. v. Bibbey, 1 Cir., 65 F.2d 634; North American Ry. Const. Co. v. Cincinnati Traction Co., 7 Cir., 172 F. 214; Thompson-Starrett Co., Inc. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35." The contract here merely provides that Rumley should perform the conditions of the contract "at his risk, cost and expense." It is upon this provision alone that Ashland seeks to be relieved from the consequences of his own negligence. We hold that this language is not so clear, explicit and unambiguous as to compel a conclusion that the parties intended to exculpate Ashland from the consequences of its own negligence and therefore fails to meet the requirements of the two latter cases.

Ashland recognizes this strict construction rule but contends that it applies only to what it terms "true indemnity contracts", that is, contracts where one of the parties agrees to indemnify the other for damages caused by its negligence to third parties. To support its position it has cited a num-

---

14, D.C.N.Y., 74 F.Supp. 538; Pacific Indemnity Co. v. California Electric Works, 29 Cal.App.2d 260, 84 P.2d 313; Pure Torpedo Corp. v. Nation, 327 Ill. App. 28, 63 N.E.2d 600; Cases Collected, 175 A.L.R. 30.

ber of cases which hold that specific reference to negligence is not necessary if the intent is shown by clear language, as for example, the Santa Fe Railway case, supra. There the Supreme Court was of the opinion that the relation of the parties was such and the contract and the supplemental contract were so worded that no other reasonable construction could be given to the contract, even though it did not specifically refer to negligence. That case does not nor do any of the other cases cited make any distinction between indemnity contracts and those where third parties are not included. In both types of contracts a party seeks to escape liability for damages caused by his own negligent acts. The indemnity contract simply effects a change in the person who shall ultimately pay those damages.

Plaintiff argues that the contract in question created a bailment and that the Oklahoma law of bailment prohibits the defense relied upon by Ashland. It seems clear that this was not a bailment. The necessary elements of bailment were not present. So far as shown by the pleadings, title to the property had not passed and it was not in the exclusive possession and control of Ashland. Broaddus v. Commercial Nat. Bank, 113 Okla. 10, 237 P. 583, 584, 42 A. L.R. 1331; 6 Am.Jur., (Rev.Ed.), Bailment, Sec. 65; 8 C.J.S., Bailments, § 15 a(2).

Ashland raises the question that the pleadings show Rumley had assumed the risk of the injury to his property. Ordinarily assumption of risk is a defense to be pleaded and proved. 35 Am.Jur., Master and Servant, Sec. 306. If there is such an issue in the case it is one of fact to be determined on the trial of the case.

The judgment is reversed and the cause remanded for proceedings not inconsistent with the views herein expressed.

HUXMAN, Circuit Judge (dissenting).

As I interpret the original opinion filed after the rehearing, in which we reversed our original decision, it was predicated on two grounds. First, that Oklahoma perhaps would hold to the strict rule of construction requiring that such contracts as we have under consideration must contain specific reference to one's own negligence in order to relieve one thereform, and second, that in any event the language in this contract was not sufficiently explicit to bring it within the more liberal rule as announced by this court in Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128.

As I interpret the opinion on file, as now amended, it is not predicated on the ground that Oklahoma has, or, as we conclude, would adopt the strict rule of construction, but rather on the ground that the language of this contract is not sufficiently explicit to bring it within the more liberal rule announced by us in the Sinclair case, supra. Since my special concurring opinion was predicated on the first ground alone, I find myself unable to concur in the opinion as now constructed.

It is my conclusion that the language in this contract is sufficiently broad and explicit to bring it within the liberal rule. There are two well recognized rules of construction, only one of which is emphasized in the majority opinion. They are: (1) That such stipulations as the one in question are not favored and will be strictly construed against the person relying upon the same, and (2) that in construing a contract, we will seek to give consideration and meaning to each and every part thereof. In my view, the majority gives no consideration to this second rule of construction. In fact, as I read the opinion, nowhere is reference made to this principle. All the opinion states is that the language is not sufficiently explicit to bring it within the liberal rule.

No meaning, weight, or consideration is given to the phrase, "at second party's risk." What did the parties intend when they agreed that Rumley was to furnish everything to be used by Ashland at Rumley's risk. Must we assume that they reached into a bag of words, took a handful therefrom and broadcast them as we broadcast seed in a field, and inadvertently and by mistake got the word "risk" as one might by accident broadcast a weed with the seed? Neither does the majority opinion ascribe or attempt to ascribe any meaning to the word "risk". So the prevailing party

at the time of argument made no attempt to give it any meaning. In fact, it was assumed that the word was inadvertently used.

Rumley agreed to furnish this equipment to Ashland at his (Rumley's) risk. By this agreement between Ashland and Rumley, Rumley assumed the risk incident to the furnishing of the equipment, and released Ashland therefrom because of his use thereof. In other words, Rumley released Ashland from liability with regard to the use of the equipment which he could have held him to but for such assumption. Ashland could not have become liable to Rumley with respect to the equipment for wear and tear thereon, loss from unavoidable accident, acts of God, or for any other cause. In fact no one has been able to point out what liability Ashland had with respect to its use of the equipment as far as Rumley was concerned, save for that resulting from its negligence. Unless this was what the parties intended that Ashland should be relieved of and that Rumley should assume, the word "risk" was meaningless and was inadvertently used.

The majority seeks to distinguish this case from other cases which are predicated on the more liberal doctrine on the ground that the language in this contract is not as broad as in those cases. Thus, it is pointed out that those contracts contained language such as: "All risk of loss or damage." "From any and all loss, damage or injury." "From any and all liability." I see no difference in legal effect of such language and the language in this contract. In fact, I can see no difference between saying that I will assume the risk resulting from the use of my equipment by another as between him and me, and saying that I will assume all the risk to such equipment resulting from such use. Without qualifying the word "risk", its natural meaning is that I assume all the risk when I state that I shall alone be liable for the risk resulting from the use of the equipment. Adding "all" or "any and all" does not expand its meaning or increase the obligation assumed thereunder. Since the only liability Ashland could have incurred to-

ward Rumley resulting from the use of Rumley's equipment by Ashland was liability for its negligent use thereof, we should conclude that when Rumley agreed that he would furnish the equipment for Ashland to use and assume the risk, that they intended that Rumley assume the risk for loss of the equipment resulting from Ashland's operation, for which Ashland would be liable only for such assumption. Since the only liability of Ashland from its operation of the equipment would be that resulting from its negligent acts, this is what Rumley assumed and relieved Ashland of. Any other construction would render the term meaningless.

I find myself unable to subscribe to an opinion which to me seems to be predicated on the assumption that the phrase, "at * * * (Rumley's) risk" is meaningless and was inadvertently used. I would hold that the language of the contract was clear and explicit and that it was the intent of the parties to relieve Ashland of its own negligence with respect to the use of this equipment.

For these reasons, I am forced to respectfully dissent.